UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 06-95-DCR
CIVIL NO. 07-370-DCR

UNITED STATES OF AMERICA                                    PLAINTIFF


VS:                          RECOMMENDED DISPOSITION


MARK SHELTON                                               DEFENDANT

\*  \*  \*  \*  \*

The Court considers a *pro se* § 2255 motion filed by Defendant Mark Shelton, on referral

from the District Judge.  *See* DE #26.  Shelton pled guilty to conspiracy to distribute five or more

kilograms of cocaine (21 U.S.C. § 846), attempt to possess with intent to distribute cocaine (§ 846),

and aiding and abetting the use of a firearm during a drug trafficking offense (18 U.S.C. § 924(c)).[1]

*See* DE #16 (Judgment).  The District Court imposed a 128 month sentence, which included

concurrent 68 month sentences for the drug trafficking offenses and a consecutive (by statute) 60

month sentence on the § 924(c) count.  *See id.*

Shelton now alleges that counsel improperly failed to file an appeal and should have

contested a two-level aggravating role enhancement under U.S.S.G. § 3B1.1(c) by arguing "sentence

entrapment."  Based on an affidavit by defense counsel Willis Coffey, the United States responds

that Shelton never requested an appeal. The United States also asserts, on the merits,  that the

---

[1]

Shelton's conviction also included two forfeiture counts.  *See* DE #16 (Judgment).

enhancement was proper.  For the reasons that follow, the Court RECOMMENDS that the District

Court DENY Shelton's § 2255 motion.

## I.  Facts

The plea agreement establishes the following relevant facts about the investigation leading

to Defendant Mark Shelton's arrest and conviction:

> (A) Prior to December 6, 2005, in Laurel County, Kentucky, the Defendant
> negotiated the purchase of fifty pounds of marijuana and ten ounces of
> cocaine from an undercover DEA agent.  The Defendant agreed to meet the
> undercover DEA agent in Corbin, Kentucky, to complete the purchase.  The
> negotiated price was $20,000 in cash.  A meet location and time were
> agreed upon.
>
> (B) On December 6, 2005, DEA agents were waiting at the agreed location
> in Corbin, Kentucky, when David Scott Bellamy was stopped in route to
> that location.  Bellamy possessed $20,000 in cash and a loaded Hi-Point .40
> caliber pistol.
>
> (C) Bellamy had been instructed by the Defendant to go to the meet
> location to purchase the cocaine and marijuana.  The Defendant provided
> Bellamy with the cash and the firearm.  The Defendant directed Bellamy to
> purchase the marijuana and cocaine with the cash and use the firearm for
> protection.
>
> (D) Bellamy was later interviewed by law enforcement an [sic] admitted
> that the Defendant provided him money to purchase the cocaine and
> marijuana.  Bellamy stated that the Defendant provided him with the
> firearm and gave him instructions to use the firearm for protection if
> necessary.

*See* DE #14 ¶ 7 (hereinafter "Plea Agreement).

Shelton accepted a plea agreement and plead guilty to two drug trafficking counts and the

§ 924(c) firearm violation on July 20, 2006.  The plea agreement outlined the essential offense

elements, established the supporting facts, and accurately reviewed the statutory minimum and/or

maximum sentence for each count.  *See id.* ¶¶ 2-12.  Shelton expressly admitted to the factual basis

contained in the plea agreement and acknowledged that the United States could prove the facts beyond a reasonable doubt. *See id.* ¶ 7.

The plea agreement also addressed Shelton's Guideline calculation and sentencing. The parties jointly recommended a three-level reduction under § 3E1.1 for acceptance of responsibility. *See id.* ¶ 13. Shelton promised that he would not file a motion to decrease his offense level based on a "mitigating role," per § 3B1.2. *See id.* ¶ 15. He also promised that he would not file a departure motion under § 5K or § 5H. *See id.* The United States, however, pledged to file a § 5K1.1 motion if Defendant provided substantial assistance. *See id.* ¶ 18. The parties had "no agreement regarding the applicability" of any other Guideline provision. *See id.* ¶ 13.

The plea agreement waived Defendant's right to appeal or collaterally attack his guilty plea and conviction, but reserved the right to appeal the sentence. *See id.* ¶ 17. In the final provision, Shelton acknowledged that the plea agreement had been explained by counsel, that he understood its terms, and that he accepted the plea agreement "voluntarily." *See id.* ¶ 23. Defendant executed the document and then appeared before District Judge Danny C. Reeves for rearraignment.

The District Judge placed Shelton under oath and established Movant's competency.[2] *See* DE #33 at 2-9 (hereinafter "Arraignment"). The District Judge next addressed the plea agreement and verified Shelton's signature. *See id.* at 13. Shelton acknowledged that he had reviewed the plea agreement, discussed it with defense counsel, and comprehended its terms. *See id.* at 13-14. The United States summarized the plea agreement. AUSA West reviewed the essential elements, the statutory minimum and/or maximum sentences, and the waiver provision. AUSA West also verified

---

[2]

Shelton explained during the hearing that he was on several medications, but the District Court confirmed that the medications did not affect Shelton's "ability to understand or reason." *See* Arraignment at 5-7.

the accuracy of the factual statement and confirmed Shelton's acknowledgment that he understood the plea agreement. *See id*. at 14-16. Neither defense counsel or Shelton objected to the summary. *See id*. at 16-17.

Following the AUSA's iteration, the District Court conducted a full Rule 11 examination and reviewed the charges. *See id*. at 26-28. In relevant part, Shelton admitted that he provided Bellamy with money for the drug buy and a gun "to use in connection with the transaction" if Bellamy "were to need it." *See id*. at 30-32. Again, Defendant agreed that the facts contained in the plea agreement were "true and correct" and further acknowledged that the United States could prove the facts beyond a reasonable doubt. *See id*. at 31-32.

The sentencing hearing occurred on October 20, 2006. The PSR suggested a Guideline range of 120 to 135 months for the drug-related offenses in Counts 1 and 2, and a 60 month consecutive sentence for the firearm violation in Count 3. *See* DE #18 ¶ 71 (hereinafter "PSR"). The PSR grouped Counts 1 and 2 together under § 3D1.2(d). *See id*. ¶ 29. Based on the drug quantity involved, Defendant's base offense level for the grouped counts was 32. *See id*. ¶ 30. The PSR applied a two-level aggravating role enhancement under § 3B1.1(c) because Shelton negotiated the drug buy, provided David Bellamy with $20,000 and a firearm, and instructed Bellamy to "shoot it out" if "something happens." *See id*. ¶ 33; *see also* PSR Addendum at 19. The PSR also applied a three-level acceptance of responsibility reduction, per § 3E1.1. *See* PSR ¶ 36.

The total recommended net offense level was thus 31. Based on Shelton's total offense level and criminal history category of I, his Guideline range was 108 to 135 months. *See id*. ¶ 71. The ten-year statutory minimum for Count 1, however, raised the bottom-end of the Guideline range to 120 months. *See id*. Pursuant to 18 U.S.C. § 924(c) and U.S.S.G. § 2K2.4(b), the Guideline

4

sentence for the firearm count was a consecutive term for the five-year statutory minimum.  *See id.*

Shelton's primary objection to the PSR was the two-level § 3B1.1(c) enhancement.  In a written objection, defense counsel acknowledged that Shelton and Bellamy "both were participants," but argued that "neither person's activity rose to the level of leader or supervisor" under § 3B1.1(c).  *See* DE #18 PSR Addendum.  Instead, Attorney Coffey maintained that Shelton and Bellamy merely "performed different functions."  The written objection admitted that Shelton "arranged" the "terms of the transaction," but countered that Bellamy "voluntarily traveled" to the purchase site to buy the cocaine.  *See id.*

At sentencing, counsel further acknowledged that Shelton provided money and a weapon to Bellamy and instructed Bellamy to "shoot it out" if necessary.  *See* DE #34 at 4-5 (hereinafter "Sentencing").  Defense counsel insisted, however, that both persons "voluntarily" participated and had "significant roles."  *See id.* at 7.  According to Coffey, Bellamy was not Shelton's employee, but was himself a drug dealer and had his own stake in the drug purchase.  *See id.* at 6-8.   Counsel also emphasized that the criminal activity was not extensive, but spanned just two days.  *See id.* at 6-7.

The District Court overruled the objection and adopted the PSR findings and Guideline calculation.  *See id.* at 9.  The Court, however, granted a § 5K1.1 motion filed by the United States and departed below the Guideline range and the ten-year statutory minimum under Count 1.  *See id.* at 16.  As a result of the downward departure, Shelton received concurrent 68 month sentences for Counts 1 and 2.  Shelton also received a consecutive 60 month statutory minimum sentence for the § 924(c) charge.

Shelton did not pursue direct review, even though the plea agreement specifically reserved the right to appeal the sentence. According to Movant, he "was under the impression" that an appeal was "automatic." Shelton complains that counsel provided "erroneous" and "ambiguous" advice about appealing. *See* DE #41 at 2 (hereinafter "Reply").

The United States submitted an affidavit from defense counsel Coffey. *See* DE #36-2 (hereinafter "Coffey Affidavit"). Coffey avers that he and Shelton "discussed" appealing "briefly" after the sentencing hearing. The affiant reports that Shelton "did not request that an appeal be filed." *See id.* ¶ 3. Furthermore, Coffey explains that he "was not aware of any sentencing issue which warranted an appeal." *See id.* Based on the § 5K1.1 departure, counsel recalls that "Shelton was satisfied with the sentence received." *See id.*

The record shows that defense counsel received a written communication from Shelton on September 28, 2007 – over eleven months after Defendant's sentencing hearing – asking about his appeal. *See* DE #26-3. The correspondence stated, in relevant part:

> I did not know that I should have heard something by now from the appellant [sic] court. Therefore, I ask, did you file my direct appeal notice concerning any sentencing issue's [sic] I may have had? If not, can you please explain why not. I was under the impression at sentencing that a [sic] appeal is automatic[.]

*See id.* The correspondence further explained that Shelton previously "attempted" to contact Coffey "on several occasions" following the sentencing hearing, but could not "get through." *See id.* Shelton never mentions when or exactly how often he tried to contact Coffey. According to Coffey's affidavit, the September 29, 2007 communication was the only post-sentencing correspondence that he received from Shelton. *See* Coffey Affidavit ¶ 4.

## II.  Issues

Shelton filed a § 2255 motion in October 2007.  He alleges that counsel improperly failed to file an appeal and should have contested the two-level aggravating role enhancement under § 3B1.1(c) by asserting sentencing entrapment.

## III.  Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may seek relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law.  *See* 28 U.S.C. § 2255.  To prevail on a § 2255 motion alleging constitutional error, a petitioner must establish that the error had a "substantial and injurious effect or influence on the proceedings."  *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)).  To prevail on a motion alleging non-constitutional error, a petitioner must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process."  *See United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(citing *Hill v. United States*, 82 S. Ct. 468, 471 (1962)); *see also Watson*, 165 F.3d at 488.[3]

---

[3]

The Court additionally recognizes Defendant's *pro se* status.  *Pro se* petitions receive a comparatively lenient construction by the Court.  *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (holding that "allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

7

## IV.  Analysis

*Failure to Appeal*

First, Shelton argues that defense counsel provided ineffective assistance by failing to appeal. The Court applies the familiar standard from *Strickland v. Washington*.  *See Roe v. Flores-Ortega*, 120 S. Ct. 1029, 1034 (2000).  To satisfy *Strickland*, Shelton must show that counsel's performance was both deficient and prejudicial.  *See Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984). Generally, a defense attorney's representation is deficient if it "fell below an objective standard of reasonableness" based on "prevailing professional norms." *See id.* at 2064-65.  In general, prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *See id.* at 2068.

The Supreme Court recognizes that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *See Roe*, 120 S. Ct. at 1035.  Moreover, the defendant in that scenario obtains "a new appeal without any further showing."  *See id.* at 1039.  Conversely, "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently."  *Id.* at 1035.

If counsel never received specific instructions, the proper inquiry is whether counsel properly "consulted" the defendant about appealing.  *See id.*  The term "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  *Id.*  If a consultation occurred, "[c]ounsel performs in a professionally unreasonably manner only by failing to follow the defendant's express instructions."

8

*Id.* If counsel and defendant did not consult, the final consideration is whether the "failure to consult . . . itself constitutes deficient performance." *See id.*

Attorney Coffey reports a "brief" discussion with Defendant about appealing "immediately after sentencing," but avers that Shelton never requested an appeal. *See* Coffey Affidavit ¶ 3. Shelton does not dispute whether counsel conducted a consultation or whether he gave counsel specific appeal instructions.[4]  Instead, Movant complains because: 1) he "believed" that his appeal was "automatic" and 2) counsel provided "erroneous" and "unsound" appeal advice.[5]  The record does not support either argument.

According to Shelton, "[he] was under the impression that his appeal was automatic" because counsel advised him that the enhancement decision under § 3B1.1 was "appealable." *See* Reply at 10 n. 2.  Plainly, Shelton's misunderstanding does not follow from counsel's advice – an appeal is not automatic merely because an issue is appealable.  In addition, the record does not suggest that Shelton could have credibly "believed" that an appeal was automatic.  At the end of sentencing, the clerk specifically advised Shelton on the record that "notice of appeal must be filed in this court within ten days from the date of entry of the judgment." *See* Sentencing at 37-38.  Shelton then executed a document acknowledging that the clerk's appeal advice was read to him in open court

---

[4]

Shelton reports that he does not recall any discussion about *not* filing an appeal. *See* Reply at 10.  The burden under *Roe*, however, requires Shelton to show that he provided "specific" and "express" appeal instructions. *See Roe*, 120 S. Ct. at 1035. Shelton cannot establish that he affirmatively requested direct review merely because he never affirmatively communicated that he would not appeal.

[5]

The argument critical of the appeal advice provided by counsel bolsters the observation that a consultation did actually occur.

and that he had received a written copy. *See* DE #15. Thus, Shelton plainly was on notice that review would require an additional filing.[6]

Shelton also argues that he would have appealed the aggravating role enhancement, but complains that counsel "erroneously informed" him that he "was not aware of any sentencing issue." *See* Reply at 9. The record shows that counsel properly advised Defendant that the enhancement was "appealable," *see* Reply at 10 n. 2, but counsel explains that he "was not aware of any sentencing issue which *warranted* an appeal." *See* Coffey Affidavit ¶ 3 (emphasis added). The distinction is significant. The chance to appeal and an appeal with merit are not coextensive. Moreover, the Court ultimately agrees with counsel's assessment.

The Guideline range for the two drug trafficking counts was 120 to 135 months, but the range still would have been 120 months *even without the enhancement* based on the ten-year statutory minimum. The District Court granted the Government's § 5K1.1 motion and ultimately imposed concurrent 68 month sentences. Considering the substantial departure below the statutory minimum, Shelton's reported satisfaction with the result makes sense. Additionally, Shelton has not

---

[6]

Attorney Coffey received a written communication from Shelton dated September 29, 2007. *See* DE #26-3. Defendant asserts that the letter corroborates his misunderstanding because it states, in relevant part: "I was under the impression that an appeal is automatic." *See id.* The Court disagrees. The communication was mailed over eleven months after Shelton's sentencing hearing and does not mention any specific issue for review. If Shelton genuinely believed that his case was on appeal, he surely would have asked counsel about it earlier. The lengthy delay between the sentencing hearing and the communication suggests Movant did not contemplate an appeal.

The correspondence also alleges that Shelton previously "attempted" to contact Coffey "on several occasions" following the sentencing hearing, but could not "get through." *See id.* These bare allegations have no specific or credible support. Shelton never mentions in the letter or in any subsequent § 2255 submission when, in what manner, or exactly how often he tried to contact Coffey. According to Coffey's affidavit, the September 29, 2007 communication was the only post-sentencing correspondence that he received from Shelton. *See* Coffey Affidavit ¶ 4. Coffey promptly responded. *See id.*

shown that he likely would have succeeded on appeal. Indeed, in the Sixth Circuit, *arrangement* of a drug transaction will support the § 3B1.1 enhancement. *See United States v. Rodriguez*, 40 F. App'x. 899, 901 (6th Cir. 2002)("Moreover, in his pre-sentence statement to the probation officer, Rodriguez admitted to arranging the transaction. As such, the district court properly adjusted Rodriguez's offense level to take into account his increased culpability."). Here, the District Court expressly found a basis for the enhancement premised on Shelton's role of arranging and bankrolling the transaction, providing a gun for protection, and instructing the courier to "shoot it out" if needed to protect the money. *See* Sentencing, at 5, 9. Any appeal would have involved attacking a preponderance finding via clear error review, a daunting task on this record. *See United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008). Thus, the Court finds no credible evidence showing that counsel provided "erroneous" appeal advice.[7]

In sum, the uncontested facts show that counsel conducted a consultation,[8] but never received

---

[7]

Because the plea agreement promised that Shelton would not file a motion for a mitigating role enhancement, Shelton asserts that the plea agreement waived his right to appeal the aggravating role enhancement. He somehow connects the purported "waiver" and counsel's failure to identify the enhancement as a potential sentencing issue. The theory plainly fails. A "mitigating role" decrease under § 3B1.2 and the aggravating role enhancement in § 3B1.1 are distinct Guideline provisions. The plea agreement prohibited Shelton from pursuing a mitigating role decrease, but it did not expressly reference § 3B1.1 or address its application. *See* Plea Agreement ¶ 15. Also, there is no implicit indication that an aggravating role enhancement should apply merely because Shelton agreed that he would not pursue a mitigating role decrease. The two Guideline provisions are not dichotomous. *See* U.S.S.G. ch. 3 pt. B introductory commentary ("When an offense is committed by more than one participant, § 3B1.1 or § 3B1.2 (or neither) may apply.").

[8]

Even if a proper consultation did not occur — which is not an issue Shelton advances — Movant would have to show that the "failure to consult . . . itself constitutes deficient performance." *See Roe*, 120 S.Ct. at 1035. According to *Roe*, counsel only has a duty to consult if either : 1) "a rational defendant would want to appeal," or 2) the "particular defendant reasonably demonstrated to counsel that he was interested in appealing." *See id.* at 1036. In addition, unlike the failure-to-appeal context, a failure-to-consult claim requires a prejudice showing. Thus, Shelton would also

11

express appeal instructions. The record thus establishes compliance with *Roe v. Flores-Ortega*. *See Roe*, 120 S. Ct. at 1035. Shelton's contention that counsel's consultation was inadequate because Coffey provided "erroneous" appeal advice has no valid support. The ineffective assistance of counsel claim accordingly fails.

*Sentence Entrapment*

Next, Shelton alleges ineffective assistance because Attorney Coffey should have asserted "sentence entrapment." The Supreme Court and Sixth Circuit have never formally accepted the theory. *See, e.g., United States v. Gardner*, 488 F.3d 700, 716-17 (6th Cir. 2007); *Sorrells v. United States*, 53 S. Ct. 210 (1932). Several unpublished decisions, however, have "assumed" that relief is available if the "government manipulated or otherwise entrapped the defendant for the purpose of increasing his sentence." *See Biggs v. United States*, 3 F. App'x 445, 448 (6th Cir. 2001). The Sixth Circuit defines the sentence entrapment theory as follows: "[O]utrageous official conduct which overcomes the will of an individual predisposed only to dealing in small quantities for the purpose of increasing the amount of drugs and the resulting sentence of the entrapped defendant." *See id*.

Shelton does not allege entrapment based on inflated drug quantities but rather uses the theory to contest his aggravating role enhancement. Movant provides no legal support showing that the theory properly applies in this context.

Furthermore, the facts alleged by Shelton would not establish sentence entrapment or

_____

have to "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 1038. Based on the record, which reflects that the only theoretical claim was the § 3B1.1 application, Shelton would be unable to carry his burden under the consultation analysis.

12

manipulation.  Movant maintains that he repeatedly refused any involvement in the arranged drug buy because he was taking his mother to her doctor's appointment on the day in question.  *See* Reply at 16.  He complains because the CI insisted on buy completion and asked whether "there was anybody else petitioner could send to see the transaction through."  *See id*.  Shelton then suggested Bellamy.

Plainly, the CI was not asking whether Shelton could send another person "for the purpose of increasing his sentence" under § 3B1.1.  *See Biggs*, 3 F. App'x at 448.  Furthermore, the CI's conduct was not "outrageous."  *See id*.  Rather, the CI merely made a reasonable effort to complete the sting after Shelton indicated that he could not physically attend the drug buy.  Because the CI was not intending to increase Movant's sentence, and because the CI's conduct was reasonable, the Court finds that the sentencing entrapment argument clearly would have failed.  Counsel's representation thus was not deficient or prejudicial for failing to pursue this theory.  *See Strickland*, 104 S. Ct. at 2064, 2068.  The Court accordingly rejects Shelton's second ineffective assistance claim.

## V.  Evidentiary Hearing

Shelton requests an evidentiary hearing.  On this record, the Court finds that such relief is unnecessary.  The reviewing court need not conduct a hearing if the allegations in the petition are inherently incredible, refuted by the record, or conclusory.  *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).  Here, the claims have no support in law or fact.  *See Blanton*, 94 F.3d at 235.  Therefore, the Court finds that this matter merits no additional evidentiary development by way of a hearing.

13

## VI.  Certificate of Appealability

A Certificate of Appealability may issue where the petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).  This requires the movant to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000).  The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

In this case, the Court's determination is not "debatable."  Movant's claims have no merit.  Thus, Shelton has not made a "substantial showing" as to any claimed denial of right, as shown by clear precedent applied to the dispositive facts.  Therefore, the Court recommends that, in the § 2253 context, the District Court refuse to certify any issues for appeal.

## VII.  Recommendation

For all of the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court DENY, with prejudice, Shelton's § 2255 motion, *see* DE #26; and

2) should Shelton make a motion under 28 U.S.C. § 2253, the District Court refuse a Certificate of Appealability as to all issues.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute.  As defined by § 636(b)(1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b),  and local rule, within ten days after being served with a copy

of this recommended decision, any party may serve and file written specific objections to any or all portions for consideration, de novo, by the District Court.

This the 11th day of September, 2008.

Signed By:

**Robert E. Wier**   *Rew*

**United States Magistrate Judge**